UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA LURINE MICHAUD,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　　　　　　　Defendant. | Case No.: 18-cv-02625-JLS-MDD<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 15, 16]** |

This Report and Recommendation is submitted to United States District Judge Janis L. Sammartino pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

Plaintiff Lisa Lurine Michaud ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final administrative decision of the Commissioner of the Social Security Administration ("Commissioner").

///

///

(ECF No. 15-1 at 2).[1] The final administrative decision of the Commissioner denied Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act ("Title II") and for Supplemental Security Income under Title XVI of the Social Security Act ("Title XVI"). (AR 37).[2]

For the reasons set forth herein, the Court **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **GRANTED IN PART**, Defendant's Cross Motion for Summary Judgment be **DENIED**, and that the case be **REMANDED** for further proceedings.

## I. BACKGROUND

Plaintiff was born on July 17, 1964. (AR 384). At the time the instant application was filed on May 27, 2014, Plaintiff was 49 years-old which categorized her as a younger person. 20 C.F.R. §§ 404.1563, 416.963.

### A. Procedural History

On May 27, 2014, Plaintiff protectively filed an application for a period of Disability Insurance Benefits under Title II and for Supplemental Security Income under Title XVI. (AR 37). The application alleged a disability beginning November 28, 2011. (*Id.*). After her application was denied initially and upon reconsideration, Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (*Id.*). An administrative hearing was held on February 9, 2017. (*Id.*). Plaintiff appeared and was represented by attorney Pauline McMahon. (AR 209). Testimony was taken from Plaintiff and impartial vocational expert Nelly Katsell. (AR 207-67).

---

[1] All pincite page references refer to the automatically generated ECF page number, not the page number in the original document.
[2] "AR" refers to the Certified Administrative Record filed on April 15, 2019. (ECF No. 20).

2

On June 28, 2017, the ALJ issued a decision finding Plaintiff was not disabled from November 28, 2011 through the date of the decision and therefore denied Plaintiff's claim for benefits. (AR 45).[3]

On August 25, 2017, Plaintiff sought review with the Appeals Council. (AR 414). On October 16, 2018, the Appeals Council denied Plaintiff's request for review and declared the ALJ's decision to be the Commissioner's final decision in Plaintiff's case. (AR 1-4). This timely civil action followed.

## II. DISCUSSION

### A. Legal Standard

Sections 405(g) and 1383(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. *Id.*; *see also Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence means "more than a mere scintilla but less than a

---

[3] The Court notes that on May 6, 2009, Plaintiff filed a claim for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI, alleging disability beginning in May 1, 2009. (AR 271-82). There, the ALJ concluded that Plaintiff had the following medically determinable impairments that in combination were considered "severe" under the Social Security Act: "[m]ild degenerative joint disease at L5-S1 without central or peripheral neuroforaminal stenosis; peripheral neuropathy in both legs per EMG in November 2010; and eczema, left lower extremity (20 C.F.R. 404.1520(c) and 416.920(c))." (AR 273). The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 274). Accordingly, the ALJ found Plaintiff was not disabled from May 1, 2009 through November 15, 2011. (AR 282).

preponderance. . . ." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (internal quotation marks and citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Batson*, 359 F.3d at 1193. When the evidence is inconclusive, "'questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary.'" *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (quoting *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971)).

Even if a reviewing court finds that substantial evidence supports the ALJ's conclusion, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. *Batson*, 359 F.3d at 1193. Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. *Id.*

### B. Summary of the ALJ's Findings

In rendering his decision, the ALJ followed the Commissioner's five step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since November 28, 2011. (AR 39).

At step two, the ALJ found that Plaintiff had the following severe impairments: moderate to severe degenerative disc disease at L5-S1 and mild

4

to moderate degenerative disc disease at L2-3, without neural impingement; peripheral neuropathy in the bilateral lower extremities; and eczema in the left lower extremity (20 C.F.R. 404.1520(c) and 416.920(c)). (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments. (AR 40) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)).

Next, after considering the entire record, the ALJ determined that Plaintiff had the "residual functional capacity [(RFC)] to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)," with the following limitations:

> lift and carry 10 pounds frequently and 20 pounds occasionally; sit, stand and walk for 6 hours out of an 8-hour workday; no push or pull in the operation of machinery with either lower extremity; never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; occasionally stoop, crouch, kneel, and crawl; must avoid concentrated exposure to dangerous moving machinery, electrical shock, radiation and unprotected heights; and must avoid concentrated exposure to temperature extremes.

(AR 41). The ALJ stated he considered the opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927. (*Id.*).

The ALJ then proceeded to step four of the sequential evaluation process. He found Plaintiff was able to perform her past relevant work. (AR 43). For the purposes of his step four evaluation, the ALJ relied upon the testimony of the vocational expert ("VE"), and the ability of someone with the claimant's RFC, both as actually done and as generally done in the national economy. (*Id.*). The VE testified that Plaintiff's past relevant work included

5

the following jobs: home attendant, cashier, assembler, receptionist, secretary, stock control clerk, and nurse assistant. (AR 44).

**C. Whether the ALJ Erred at Step Two of the Evaluation Process**

The sole issue in dispute is whether the ALJ erred at step two of the evaluation process under 20 C.F.R. 404.1520(a) ("Step Two") by failing to categorize Plaintiff's photophobia as a severe or non-severe impairment that affected her RFC. (ECF No. 15-1 at 4). At Step Two, the ALJ must determine whether the claimant has a "severe medically determinable physical or mental impairment" that has lasted, or is expected to last, more than 12 months. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). If the claimant does not have a severe, medically determinable physical or mental impairment that meets the duration requirement, or a combination of impairments that is severe and meets the duration requirement, the claimant is not disabled. *Id.* The claimant has the burden of establishing a severe impairment. *Id.*

A medically determinable impairment is considered "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(iii), (c). Basic work activities are those "abilities and aptitudes necessary to do most jobs," including, as relevant here, "capacities for seeing." 20 C.F.R. § 404.1522(b). While the ALJ must take into account a claimant's pain and other symptoms at Step Two, the severity determination is made solely on the basis of the medical evidence in the record. SSR 85-28 ("[A]t the second step of sequential evaluation it must be determined whether medical evidence establishes an impairment or combination of impairments 'of such severity' as to be the basis of a finding of inability to engage in any SGA.").

The Step Two inquiry is a "de minimis screening device used to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "It is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). When determining the claimant's RFC, the ALJ must consider "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* at 1049 (citations and internal quotation marks omitted). "The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* Therefore, where the ALJ fails to list a medically determinable impairment at Step Two, but nonetheless considers the limitations posed by the impairment in the RFC, any error at step two is harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Here, the ALJ concluded that Plaintiff has photophobia, but that "the record does not document any restrictions" or "severe visual impairment[s]." (AR 40). As a result, the ALJ did not consider the effects of photophobia at subsequent steps in the sequential evaluation. (*See* AR 41-45). In his photophobia analysis, the ALJ cites only four exhibits. (AR 40 (citing AR 596, 665, 676, 756-89)).

First, the ALJ cites to an evaluation by Russell Edwards, M.D. ("Dr. Edwards") from April 1, 2014. (AR 40). In November 2013, Dr. Chen referred Plaintiff for evaluation due to her complaints of "extreme sensitivity to light" and reports of "get[ting] unsteady" if she looks into the light. (AR 595). Dr. Edwards prescribed Plaintiff eye glasses with "FL 41 tint" for "extreme hypersensitivity to light." (AR 596).

Second, the ALJ cites Dr. Chen's December 11, 2014 progress notes. (AR 40). Dr. Chen examined Plaintiff and indicated she is "still having

7

sensitivity to light. Has taped dark lenses on the inside of a pair of sunglasses." (AR 665). Dr. Chen further noted that Plaintiff was "wearing . . . sunglasses in the exam room." (*Id.*).

Third, the ALJ cites to Dr. Edwards' April 1, 2014 evaluation. (AR 40). He noted that Plaintiff had been referred for evaluation "of extreme[] photophobia." (AR 676). Plaintiff reported her light sensitivity began in 2006, but became "extreme over the past several years [and that she] wears 2 pairs of sunglasses," but thinks she needs a third pair on top. (*Id.*). She also indicated "balance disturbances." (AR 677). Dr. Edwards diagnosed Plaintiff with "Blepharitis, unspecified." (AR 679). He also indicated Plaintiff has "[a]bnormal sensitivity" to light, listing several factors "independent of photo sensitivity" that may also contribute to her condition. (AR 680). He recommended Plaintiff get a "brain MRI" and try "FL-41 tint glasses." (*Id.*).

Fourth, the ALJ cites Dr. Chen's November 2015 to November 2016 progress notes in which he noted Plaintiff was wearing dark glasses "as always." (AR 40, 759, 773, 782).

However, the ALJ did not consider several medical records relating to photophobia. For example, the medical records indicate Dr. Chen treated Plaintiff from March 26, 2012 through June 25, 2014. (AR 603-36). On several occasions over that time-frame, Dr. Chen reported Plaintiff's behaviors could be symptoms of light sensitivity. (AR 603, 606, 608-09, 615, 618). Specifically, on July 3, 2013, Dr. Chen treated Plaintiff for bilateral photophobia and referred her to an ophthalmologist. (AR 621). Plaintiff reported that indoor light and sunlight causes her eye pain. (*Id.*). Dr. Chen noted that Plaintiff was wearing sunglasses and "then covered her eyes with a dark cloth as well." (*Id.*). On December 18, 2013, Dr. Chen examined Plaintiff regarding light sensitivity and again assessed her with bilateral

8

photophobia. (AR 612). Dr. Chen indicated Plaintiff was wearing two pairs of sunglasses and sitting in a dark room. (*Id.*).

Additionally, on January 14, 2014, treating physician Nickolet Boermans, O.D., examined Plaintiff for light sensitivity. (AR 589). Dr. Boermans' records indicate he was unable to view Plaintiff's retina due to "pt cooperation." (AR 590). Nonetheless, Dr. Boermans diagnosed Plaintiff with "Photophobia." (AR 591).

Further, the ALJ did not consider two Disability Determination Explanations. On November 19, 2014, non-examining physician D. Subin, M.D., noted that Plaintiff complained of "hyper-sensitivity to light." (AR 291). Dr. Subin referenced treatments regarding light sensitivity, including Plaintiff's Eye Care of San Diego examinations on January 14, 2014 and February 18, 2014, but concluded Plaintiff does not have any "visual limitations" nor any "environmental limitations." (AR 296, 301). At the same time, Dr. Subin conceded that a consultative exam was required because "additional evidence [was] required to establish current severity of the individual's impairment(s)." (AR 295). On February 2, 2015, non-examining physician S. Lee, M.D., noted that Plaintiff's "condition to sensitivity to light has made it difficult to be in public places, she must stay indoors and with doors, windows and lights off all the time." (*Id.*). Dr. Lee explained that "[Plaintiff] has been diagnosed with extreme hypersensitive [sic] to light, it affects all aspects of her daily living." (*Id.*). Dr. Lee recognized Plaintiff reported "worsening of hypersensitivity." (AR 324). Dr. Lee notes that the only medical evidence of record from 12/14 shows Plaintiff "wearing sunglasses in no acute distress." (*Id.*). While Dr. Lee indicated a consultative exam was required, the doctor concluded that Plaintiff does not have any "visual limitations" nor any "environmental limitations." (AR 324, 327).

The ALJ also did not consider examining physician Thomas J. Sabourin M.D.'s ("Dr. Sabourin") November 13, 2014 orthopedic consultation or treating physician John Bokosky M.D.'s ("Dr. Bokosky") February 18, 2014 examination. (AR 587-88, 652). While Dr. Sabourin focused on Plaintiff's complaints of pain in the neck, hands, back, hips, feet, and knees, he noted that she has "eye hypersensitivity to light." (AR 652-53). Dr. Bokosky examined Plaintiff because she sought a different light sensitivity prescription and wanted a diagnosis "for extreme light sensitivity." (AR 587).

The Court further notes the ALJ addressed Plaintiff's claim of photophobia in depth at the administrative hearing. For example, the ALJ "dimmed the lights" as Plaintiff entered the hearing to accommodate her sensitivity to light. (AR 214). The ALJ noted Plaintiff was wearing "very, very dark sunglasses" with "one lens taped behind the other." (*Id.*). Plaintiff testified she wears dark glasses all the time, does not turn the lights on in her home, and cannot read white pages. (AR 243-44). As a result, she states she cannot work as a secretary or receptionist. (AR 250-51). Finally, the ALJ asked the VE whether a person who could not work if any acute vision is required or with only occasional acute vision is required could perform sedentary work. (AR 263-65). The VE stated there would be no work. (AR 264-65).

Absent consideration of all the evidence of Plaintiff's photophobia, the Court cannot determine whether the ALJ's finding of no restrictions or severe visual impairments is supported by substantial evidence. Accordingly, the ALJ erred at Step Two.

**D. Remand for Further Administrative Proceedings**

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the

10

Court.  *See, e.g., Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).  Remand pursuant to sentence four of § 405(g) for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision.  *See, e.g., Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984); *Lewin*, 654 F.2d at 635.  Remand pursuant to sentence six for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled, *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985).

As noted above, the ALJ erred at Step Two by failing to consider all the evidence of Plaintiff's photophobia.  Under these circumstances, the Court is unable to affirm the ALJ's photophobia determination at Step Two.  Moreover, because the ALJ did not consider effects of photophobia at subsequent steps of the sequential evaluation, the Court is also unable to affirm the ALJ's RFC determination.  As this is an issue that must be resolved through further proceedings, the case must be remanded to determine whether Plaintiff's photophobia is a medically determinable impairment, and to incorporate any credible limitations arising out of Plaintiff's photophobia, regardless of severity, into the RFC.

### III. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED IN PART**, Defendant's Cross Motion for Summary Judgment be **DENIED**, and that the case be

**REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this Report and Recommendation. This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

**IT IS HEREBY ORDERED** that any written objection to this report must be filed with the Court and served on all parties no later than **November 18, 2019**. The document should be captioned "Objections to Report and Recommendations."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **November 25, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated: November 1, 2019

Hon. Mitchell D. Dembin
United States Magistrate Judge